IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANESSA COBB-LEAVY, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF YEADON, et al. | : | No. 18-1069 |
| Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                                   September 5, 2018

Vanessa Cobb-Leavy was injured when a high-speed police chase in Southwest Philadelphia ended with a car crashing into the building she occupied. She brought § 1983 claims against the Borough of Yeadon and its police chief. In addition, she asserts state law claims against the Borough of Yeadon, its police chief, and the pursuing officer. Defendants filed a motion to dismiss. For the reasons set forth below, the Court grants the motion.

I.  BACKGROUND

On the night of August 29, 2016, around 9 p.m., Officer Paul McGrenera of the Borough of Yeadon Police Department initiated a vehicular pursuit in Southwest Philadelphia. (Compl. ¶¶ 9–10.) The high-speed pursuit ended abruptly when Jerome Tucker, the man pursued by Officer McGrenera, lost control of his vehicle and crashed into the building occupied by Cobb-Leavy. (*Id.* ¶¶ 15–16.) The crash caused Cobb-Leavy to be knocked to the ground and struck by flying debris. (*Id.* ¶ 16.) She suffered serious injuries as a result, including multiple contusions, a sprained knee and arm, and herniated discs. (*Id.* ¶ 19.) She alleges that during the high-speed pursuit, Officer McGrenera drove at speeds well above the posted speed limit and did not use his emergency sirens or lights. (*Id.* ¶ 14.) Cobb-Leavy claims that McGrenera's manner of pursuit caused Tucker to lose control and crash into her property. (*Id.* ¶ 15; Pls.' Resp. at 3.)

Cobb-Leavy sued the Borough of Yeadon, Yeadon Police Chief Donald Molineux, and Officer McGrenera. She asserts that the Borough of Yeadon and Chief Molineux failed to implement adequate police protocols governing high-speed pursuits, to train officers about high-speed pursuit conduct, and to supervise officers such as Officer McGrenera during pursuits. (Compl. ¶ 43, ¶ 48.) She also claims these failures caused the accident and her injuries. (*Id.* ¶ 17, ¶¶ 44–45.)

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Federal Rules do not impose a probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the court can infer only "the mere possibility of misconduct," the complaint must be dismissed because it has failed to show that the plaintiff is entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived her of rights secured by the Constitution or federal law. 42 U.S.C. § 1983; *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Here, Cobb-Leavy asserts § 1983 claims against the Borough of Yeadon and its chief of police, Chief Molineux. Although Cobb-Leavy does not assert § 1983 claims against Officer McGrenera, she does seem to suggest that she may have an excessive force claim against Officer McGrenera. (*See* Pls.' Resp. at 8.) To the extent that Officer McGrenera's conduct relates to Cobb-Leavy's claims—and because she focuses on Officer McGrenera's conduct throughout her Complaint and Response to Defendants' Motion to Dismiss—the Court will address it.

Cobb-Leavy appears to base her claims on the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. As discussed below, the Court finds that Cobb-Leavy has not asserted a deprivation of a recognized right under either Amendment. Under Third Circuit precedent, that does not necessarily prevent her claims against the Borough of Yeadon. However, other flaws in the Complaint warrant dismissal of that claim. Chief Molineux is entitled to qualified immunity.

### A. Plaintiff Has Not Alleged a Deprivation by Officer McGrenera.

Cobb-Leavy cannot bring an excessive force claim in this case because no Fourth Amendment seizure occurred. This is because "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). Remote bystanders

3

such as Cobb-Leavy must therefore look to substantive due process, not the Fourth Amendment, for constitutional protection. *Davis v. Twp. of Hillside*, 190 F.3d 167, 169 n.1 (3d Cir. 1999).

For government conduct to violate substantive due process, the conduct at issue must shock the conscience. *Lewis*, 523 U.S. at 847. In the case of a justifiable high-speed chase, because of the split-second decisions involved, a police officer's conduct cannot shock the conscience absent an "intent to harm suspects physically or to worsen their legal plight." *Id.* at 854; *see also Davis*, 190 F.3d at 170 n.2 (noting that under *Lewis*, "if a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase").

Here, Cobb-Leavy does not allege that the high-speed chase at issue was unjustified. Rather, she claims that Officer McGrenera's "reckless pursuit of a suspect into a residential area[] establishes an intent to harm." (Pls.' Resp. at 10 (citing *Lewis*, 523 U.S. at 851).) But this is incorrect: recklessness is not synonymous with an intent to harm. *Cf. Lewis*, 523 U.S. at 851 (noting that "when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose" to shock the conscience). Thus, the allegations do not support a claim that Officer McGrenera violated Cobb-Leavy's substantive due process rights.

### B. The Complaint Does Not Support a *Monell* Claim against the Borough of Yeadon.

Cobb-Leavy brings failure to train and failure to supervise claims under § 1983 against the Borough of Yeadon. (*See* Compl. ¶¶ 47–52.) Municipalities are considered "persons" under § 1983, but they cannot be held liable for their employees' actions on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality may only be found liable if a plaintiff can "identify a particular 'policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy,' and show that the policy in question directly led to" a § 1983 deprivation. *Bergdoll v. City of New York*, 515 F. App'x 165, 171 (3d Cir. 2013) (quoting *Monell*, 436 U.S. at 694). A municipality's failure to train its officers can be considered a "policy or custom" under § 1983 when the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Failure to train or supervise that constitutes deliberate indifference occurs when "a pattern of violations" is caused by the failure or a violation is a "highly predictable consequence of [the] failure." *Berg*, 219 F.3d at 276.

Here, as noted, Cobb-Leavy has not alleged a legally-recognized deprivation. *Monell* generally does not allow a municipality to be held liable for its officers' actions when its officers did not inflict a constitutional deprivation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). However, the Third Circuit has created an exception to this rule. In *Fagan v. City of Vineland*, the court held that a municipality can be liable "for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution." 22 F.3d 1283, 1292 (3d Cir. 1994). Thus, Cobb-Leavy may be able to proceed with her *Monell* claim against the Borough of Yeadon even without alleging a predicate deprivation. Here, however, Cobb-Leavy fails to allege a policy supporting municipal liability or a causal link between a policy and a deprivation.

> 1. *The Complaint does not allege a causal link between a policy and a constitutional deprivation.*

Cobb-Leavy alleges that Chief Molineux and the Borough of Yeadon failed to train or supervise police officers with regard to high-speed pursuits. (*See* Compl. ¶¶ 42–52.) However, "[t]he first question in any case alleging municipal liability for a failure to train is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

5

deprivation." *Brown v. Pa. Dep't of Health Emer. Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003). Even under *Fagan*, the pursuing police officer is characterized as "the causal conduit for the constitutional violation committed by the City." 22 F.3d at 1292. Therefore, a plaintiff is still required to show that the deprivation occurred because the officer followed the municipality's inadequate policy. *Id.*

Here, as noted, Cobb-Leavy has not alleged a recognized constitutional deprivation. Thus, there can be no "causal link" between a failure to train and a deprivation. Therefore, the Borough cannot be held liable under § 1983. *See Brown*, 318 F.3d at 482. ("[F]or there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights."). Cobb-Leavy's allegations are boilerplate assertions about the Borough of Yeadon's inadequate policies. For example, Cobb-Leavy asserts that the Borough of Yeadon "failed to have an adequate policy in place governing pursuits; it failed to properly train its officers in the conduct of such pursuits; it failed to supervise its officers during such pursuits." (Compl. ¶ 48.) These are general and conclusory statements rather than allegations about specific deficiencies. Cobb-Leavy also neglects to present facts allowing the Court to reasonably infer that the pursuing officer actually caused the crash or that adequate policies would have avoided the fleeing suspect's car crash. Although Cobb-Leavy alleges that Officer McGrenera pursued the suspect without using emergency sirens required by the Pennsylvania Motor Vehicle Code, she does not allege whether or how that caused the crash. (Compl. ¶ 14). Even if she did, § 1983 does not provide a cause of action for state law violations that may not rise to the level of federal constitutional standards. *Cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

For the foregoing reasons, Cobb-Leavy fails to state a claim against the Borough of Yeadon under *Monell*. *See Tieman v. City of Newburgh*, No. 13-4178, 2015 WL 1379652, at *22–*23 (S.D.N.Y. Mar. 26, 2015) (explaining that § 1983 plaintiffs asserting failure to train claims are still required to meet pleading standards under *Iqbal* despite limited information during pre-discovery stages).

        2.      *The Complaint does not allege a policy supporting municipal liability.*

As noted, municipalities can only be liable under *Monell* if their policies lead to a deprivation. To show a policy supporting municipal liability, a plaintiff must demonstrate that a decisionmaker with "final authority to establish a municipal policy" issued an official policy. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Whether an official is such a "policymaker" is a question of state law. *Pembauer*, 475 U.S. at 483.

The only purported policymaker that the Complaint points to is Chief Molineux. However, "as a matter of Pennsylvania state law, a township Police Chief" such as Chief Molineux "is not a final policymaker." *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (citing 53 Pa. Stat. Ann. § 66902); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (noting that courts are barred from "assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it"). Since Cobb-Leavy fails to point to a policymaker to establish a policy, the Complaint fails to state a claim that the Borough of Yeadon had an unlawful policy.

## C. Chief Molineux is Entitled to Qualified Immunity.

Cobb-Leavy asserts similar "failure to" claims against Chief Molineux. However, even if Molineux could be sued for his alleged failings, Defendants argue that Chief Molineux is entitled to qualified immunity from the § 1983 claims against him. The Court agrees.

Qualified immunity protects officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the incident. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity gives officials immunity from being sued, not just protection from liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Because of this, "the Supreme Court repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

Officials are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts have discretion to decide which of these "prongs" to address first. *Pearson*, 555 U.S. at 236.

The analysis here can begin and end with the first prong. As discussed earlier, Cobb-Leavy's allegations with regard to the high-speed chase do not establish a violation of a constitutional or statutory right. Thus, Chief Molineux is entitled to qualified immunity and the claims against him must be dismissed.

### D. State Law Claims.

Cobb-Leavy also brought claims under the Pennsylvania Constitution and common law negligence. Having dismissed all federal claims which gave it jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## V. CONCLUSION

For the reasons discussed above, the motion to dismiss is granted. However, the Court will allow Cobb-Leavy to amend her Complaint with respect to claims against the Borough of Yeadon, if possible. An Order consistent with this Memorandum will be docketed separately.